---

(Franklin County Common Pleas, 1898.)
WILLIAM D. DAWSON et al. v. OSSIAN E. BARRON, TREAS, etc.

---

A property owner who signs a petition to the county commissioners for a free turnpike, has the right to withdraw from the petition at any time before the final order for the improvement is made, and this he may do in any manner that will indicate unmistakably his intention to withdraw his consent and become a remonstrator instead of a petitioner. But until he has indicated his intention in an unmistakable manner, he is still to be regarded and may be counted as a petitioner.

Where it appears in such case that a property owner signed both the petition for the road improvement and the remonstrance against it, it does not follow that because the evidence in the court of common pleas on appeal shows that he signed the remonstrance last, that therefore he is to be counted against the improvement. but the question is, what was the evidence before the commissioners of the fact that he had signed the remonstrance last.

After the county commissioners have acted upon the petition and ordered the improvement and the improvement has been made, the presumption is in favor of the finding of the commissioners, and the burden is upon the remonstrators to prove that a majority did not stand in the position of petitioners at the time the improvement was ordered.

Where at the time the order of the county commissioners for the establishment of a free turnpike was made, the statute authorized the commissioners to extend the time of assessment for the same to ten years in addition to the eight years provided for in the petition, an amendment of the statute passed subsequently to such order, extending the time for which the assessments for such pikes could be levied to fifteen years, has no application to such road improvement, and where the commissioners after the passage of such amendment of the statute, extended the assessment to twelve years, such assessments beyond the ten years are invalid.

BIGGER, J.

This is an action to enjoin the collection of an assessment levied upon the plaintiff's lands to pay for the construction of the Gahanna and New Albany turnpike. It is claimed that the names of these plaintiffs were not placed upon the list of property to be assessed in the first instance, but were afterwards, and, irregularly, added to the duplicate.

In my judgment, however, if the lands of these plaintiffs were within the assessable district and the commissioners had jurisdiction to order the improvement, they cannot object to the fact that in a court of equity their names have been placed upon the list irregularly, because they are rightly there.

Whether or not they are within the assessable district depends upon whether the Granville road and the Granville turnpike are connected or disconnected roads, within the meaning of the statute. They are very old roads and originally the junction of the two roads was some distance west of the Creek, but about 1853 a bridge was built over the creek and by legal proceedings the location of the Columbus and Johnstown road was changed from the north corporation line of Gahanna to the east end of the bridge which was located but little north of the Granville road, in fact so close to that by being constructed at an angle with the Granville road, the bridge meets and obstructs the line of the Granville road proceeding across the stream before the bridge reaches the west bank. Of course, it can be shown that the old line of the Granville road does not touch the line

of the Gahanna and New Albany turnpike before it terminates at the east end of the bridge. But these roads, in my judgment, were never anything else but connected roads. They were connected when they were laid out and the travel from the Granville road to the other road never was obstructed, or the junction of the two roads interrupted for a moment. But, upon the building of the bridge, which, as I say, was built so close to the Granville road that it partly at least obstructed the line of the Granville road where it crossed the creek, the travel upon the Granville road was simply deflected sufficiently to the north to permit it to enter the east end of the bridge. I do not think that the fact that in doing so, it used part of Mill street, changes the fact. In fact it simply crossed Mill street at an angle sufficient to permit it to enter the east end of the bridge. I am of opinion that Lear v. Halstead, 41 Ohio St., 566, is not in point or decisive of this case. In that case the two roads were never connected roads. The one of them never terminated in the other. But in my opinion these two roads never were disconnected; and one of them never, in fact, ceased to terminate in the other. For these reasons in my judgment, the Granville road and the Gahanna and New Albany turnpike are connected roads within the meaning of the statute. That being true. the lands of these signers of the petition, which lie south of the Granville road and within the statutory distance of the pike, are properly to be counted as petitioners; and in fact, it is conceded by counsel for plaintiffs, that, if the two roads are to be considered as connected roads, then these lands lie within the bounds of the assessable district.

This question being determined, the next question which presents itself, is, did a majority of the land owners within the assessable district petition for the improvement? Without undertaking to make out a list of the names counted for and against the improvement, I think I can use the very excellent brief and chart of these names, prepared by Mr. Thrailkill so as to clearly indicate those I have counted for and against the improvement, with my reasons for doing so.

In the first place, counsel for defendants, in his brief makes out a list of 88 names which he says counsel for plaintiffs admits to be proper petitioners. An examination of the chart shows that counsel for plaintiffs has been more magnanimous than that; for he counts 89 petitioners, John Ulrey on the last page of the chart being a petitioner instead of a remonstrator, and is so marked on the chart. This makes the count stated, according to counsel for plaintiffs, 89 names for the improvement and 117 against it, or 206 names in all counted for and against the improvement. The 89 names which are marked on the chart as petitioners, I think are properly so marked. These 89 names include the names of those whose lands lie south of the Granville road, which counsel for plaintiffs claim should not have been counted but which, in my opinion, and for the reasons I have indicated, I think should have been counted as petitioners, as in my judgment they are within the assessable district.

Within the bounds of this improvement there are seven churches, two of which own parsonages. Counsel for plaintiffs includes in his count of 117 remonstrators the two churches which own parsonages, but does not include the churches which own only houses of worship, although he claims that the churches should also be counted which have no parsonages. On the other hand, counsel for defendants claim that neither should be counted as petitioners or remonstrators. In my judgment the count as made by counsel for plaintiffs in his chart is the correct count as to these churches.

Section 4799, Revised Statutes, provides that only freehold taxpayers should be counted as petitioners and remonstrators. Churches having no parsonages cannot be regarded as freehold taxpayers because they are not so in fact. The Supreme Court, however, has decided in Gerke, etc. v. Purcell, 25 Ohio St., 229, that a parsonage is taxable property, and, therefore, these churches which have parsonages should be counted against the improvement. No change, therefore, should be made in the county as furnished by counsel for plaintiffs on account of these churches.

Of the 117 names which counsel for plaintiff count or remonstrators, are the following names which counsel for plaintiffs in his brief admit appear both upon the petition and the remonstrance: John Bender, Harriet Neiswander, William Paul, William Stygler, William F. Bauer, William Cummings, Abraham Shull, Mary Shull, Conrad Schank, Sallie Dague, Levi Dague, Sr., David Ely, Russell E. Wilkins, Nelson Wilkins. Fourteen in all. In addition to those names, an inspection of the petition and the remonstrance discloses the fact that there are several others whose names also appear upon the petition and remonstrance. For example, the names of Lewis Shull and Noah Swickard are also found upon both and they were called as witnesses and testified that they signed both, but signed the remonstrance last.

Those 16 names, counting these two, without

going further in regard to the total number of names which thus appear upon both the petition and remonstrance, were scattered through a long list of petitioners and remonstrators.

Counsel for plaintiffs now claim that all these 16 persons signed the remonstrance last, and testimony has been introduced to prove that at least part of them did sign the remonstrance last. Some of these persons have testified that they signed the remonstrance last. It is therefore claimed by counsel for plaintiffs that these names should all be counted as remonstrators.

There is no question as to the right of a petitioner to withdraw from a petition at any time before the final order for the improvement is made, and this he may do in any manner that will indicate unmistakably his intention to withdraw his consent and become a remonstrator instead of a petitioner. But until he has indicated his intention in an unmistakable manner, in my judgment, he is still to be regarded as a petitioner. It is within his power to withdraw his name by stating plainly that he withdraws it, but until he does do so, he, or no one else, has any righ to complain that he is counted as a petitioner.

Did these persons who signed both the petition and the remonstrance thus unmistakably indicate their intention? These petitioners and remonstrators as finally presented to the board were upon detached sheets of paper, which had been circulated in the district for signatures. There is nothing stated in the remonstrance to indicate that these persons were also petitioners. Neither is there any statement made by these persons in their remonstrances that they signed the petition. There was no evidence introduced that I remember of, showing that the attention of the commissioners was specially directed to these names which appeared upon both the petition and the remonstrance, or that the attention of the commissioners was specially called to the fact that these names were signed to the remonstrance last. It was a privilege of these persons to withdraw their names from the petition and it was their duty, if they did not desire to be counted for the improvement, to withdraw their consent in such a way as would indicate unmistakably, in the language of the authorities upon the subject, their intention to withdraw; and if they did not so indicate their intention, in my judgment after the improvement has been made and the expense incurred, the fact that it is made to appear that some at least of them signed the remonstrance last, cannot be taken advantage of by any one to defeat the assessment. It is true some of

them now state that they signed the remonstrance last, but they did not state that to the commissioners, as each one of them who was upon the stand admitted.

I hold that these parties were to be considered petitioners until they unmistakably indicated their intention to withdraw. It was an easy matter for these persons in signing these remonstrances to have stated that they were petitioners and now withdraw their names from the petition, or that their names were signed to the remonstrance after they were signed to the petition.

That a person, once signing a petition, can only be relieved from the effect of such a signature by the clearest evidence of his intention to withdraw is evident from the language of Ashburn, J., in Hays v. Jones, 27 Ohio St., 218, in the opinion of which case, on page 231, he says:

"One who has subscribed the petition may at any time before the board makes the final order, by remonstrance or other unmistakable sign, signify his change of purpose. The form or manner in which his dissent is made known is immaterial. If it is clearly made known to the board of commissioners. that is sufficient."

It will not do to say that because the evidence now shows that such and such persons signed the remonstrance last, that therefore they are to be counted against the improvement. The question is, what was the evidence before the commissioners of the fact that they had signed the remonstrance last? For, unless, their intention to withdraw from the petition was shown to the commissioners unmistakably, the fact that it may now appear, upon the hearing of this court, that some at least of these parties signed the remonstrance last will not and ought not, after the expense has been incurred and the right of the third parties have intervened, be allowed to defeat the assessment.

Counsel for plaintiffs say that some of these parties were actually counted against the improvement and that Mr. Tussing's notes show that fact. It is true Mr. Tussing testified that three or four of these names did not appear in his memorandum list of petitioners, but he also stated expressly, when upon the stand, that his notes did not show who were counted for or against the improvement. The evidence shows that just before the hearing, parties were rushing about with petitions and remonstrances, and persons who had signed one signed the other again without indicating which they had signed last; and, at least in one case, a party who signed the petition then signed the remonstrance and then signed the

petition again. It seems to me that after such a. state of affairs it was very easy for the commissioners to be mistaken as to whether parties whose names were upon both were properly to be counted as petitioners or remonstrators. There is, as I say, no clear evidence in the case to show with any certainty whether these names were counted for or against the improvement.

I, therefore hold, that as to these persons, they did not so unmistakably indicate their intention to the commissioners to wihdraw their names from the petition, as they might have done, as would warrant the court in finding that these parties might not have been properly counted by the commissioners as signers for the improvement. These 16 names must, therefore, in my judgment, be added to the 89 petitioners, making 105 petitioners, and subtracted from 117, makes 101 remonstrators.

Adam Reeb is counted as a remonstrator. If a line be drawn at a right angle to the last course of the road, it will leave Adam Reeb outside of the bounds of the district. That this is the proper method of determining the boundary is, I think, clearly indicated in Lear v. Halstead, *supra*. Counsel for plaintiffs argues that to make this the rule would lead to fraud. But in reply to that it is sufficient to say that the case he assumes is not presented in this case, as a line drawn at right angles at the end of this improvement with the last course will be very nearly at right-angles with the whole course of the improvement and much more nearly at right-angles to the whole course of the improvement than if drawn at right-angles with Mill street. Deducting his name from those counted as remonstrators leaves 100.

Then it is conceded by counsel for plaintiffs that Alonzo Taylor, who was omitted in this count, is probably to be counted as a petitioner. which would make 106 petitioners. So I have concluded that the commissioners were warranted in finding under all circumstances, that a majority had signed.

The next question in this case is as to the commissioners' authority to extend the tax for a period aggregating twenty years. The order for this improvement was made by the county commissioners on May 19, 1893.

The statutory provisions upon this subject at the time of the making of the order, were as follows:

Section 4774, Revised Statutes, provides for a petition of the majority of the resident land owners and provides that the petition shall state "that they desire the county commissioners to levy an extra tax, the amount of which shall not exceed ten mills on each dollar valuation in any year, on the lands and taxable property within the bounds of the road, and also the number of years they desire the levy to continue, not exceding eight years." The petition in this case asks for a levy of ten mills each year for eight years.

Section 4777 provides "that no such tax shall be levied for an amount or for a term of years greater than that set forth in the petition unless the petition be renewed, or the county commissioners order an extension of the levy for the purposes stated in section 4812." There is no claim that the petition was renewed; so that the power of the commissioners to extend the tax must have been under the provisions of section 4812, Revised Statutes.

Section 4812, Revised Statutes, was, as it then stood, as follows: "The provisions of this chapter shall extend and be applicable to all free turnpike roads heretofore built, now in process of construction, or hereafter to be constructed; and at any time when the county commissioners deem it necessary for the purpose of providing the means for completing the same, and liquidating any indebtedness incurred on account of such road, they may continue the tax originally levied for constructing the same, for a period not exceeding, in the aggregate, ten years, in addition to the levy made on petition as provided for in section 4777."

It, therefore, appears that the authority of the commissioners to extend the levy only authorized them to extend it for a period of ten years in addition to the eight years provided for in the petition, which would make eighteen years in all.

The commissioners have in this case extended the period to twelve years, but counsel for defendants claims that this is authorized by section 4812 Revised Statutes, as amended February 6, 1894. By the act, as amended, the commissioners were authorized to extend the levy for a period of not to exceed fifteen years in all, in addition to the eight years.

The question which presents itself here, is, had the commissioners authority, under this amended act, to extend the levy as they did for the period of twelve years or were they restricted to the period provided for in the statute at the time the improvement was ordered?

Under the constitution, the legislature has no power to pass retro-active laws.

In Cincinnati v. Seasongood, 46 Ohio St., 296, the court lays down this rule of law in the syllabus in the case:

"A municipal corporation having through its proper boards and officers passed a resolution and ordinance to improve a street, in.

its assessment of the cost and expense of the improvement of abutting property, it should be governed by the law in force at the time of the passage of its improvement ordinance, with respect to the manner of assessment and the rights and liabilities of the owners of abutting property."

In that case, after the improvement had been ordered by ordinance, the legislature amended the act changing the manner of making the assessment by which the complainant was made liable to be assessed for a greater number of feet front than under the act as it stood when the improvement was ordered.

In the opinion which was delivered by Dickman, J., it is said on page 301:

"The law contemplates that before the ordinance to make the improvement is passed, there shall be certain preliminary proceedings. Such ordinance is the resultant of such proceedings, and evidences the final determination of the property owners, through their public agents, to assume whatever burden may be entailed upon them by the law in force when the improvement ordinance is passed."

And again on page 303 he says: "It is reasonable to presume that the passage of the ordinance to improve the street, was not without reference to existing rights and liabilities. the ordinance was doubtless passed in full view of the law as it then stood in regard to special assessments. * * * By virtue of the law then in force, they were obligated to pay an assessment on the basis of 60.2 feet of frontage, but under an amendment of the same law after the passage of the improvement ordinance it is claimed they became liable on 104.50 feet. In our view, under the prior act they became vested with a substantial right of which they could not be deprived by the operation of the subsequent law."

So in this case, when these parties petitioned for this improvement they did so with the knowledge—for they are presumed to know the law—that their assessment to pay for this improvement could not in any event exceed a levy of ten mills in any one year for a period of not to exceed the aggregate of 18 years. The legislature, in my judgment, was without power to pass a law which would increase their liability to assessment beyond that provided in section 4812 Revised Statutes at the time when the improvement was ordered. If the legislature has the power to extend the levy for a period of five years in addition to that provided by law, when the improvement was ordered, they might extend it for fifty years in the discretion of the commissioners, although at the time when the petition was asked for the improvement, they were only

liable to be assessed for a period of ten years in addition to the eight years, provided for in the petition.

In my judgment, therefore, the excess of this levy beyond the levy of ten mills upon the tax duplicate for the period of 18 years should be enjoined and an entry may be drawn to that effect.

I have given a great deal of time and labor to this case. Counsel for plaintiffs says that the provisions of the law ought to be strictly construed. But after the commissioners have acted upon the petition and ordered the improvement and the improvement has been made, the presumption is in favor of the finding of the commissioners and the burden is upon the plaintiffs in this case to prove that a majority did not stand in the position of petitioners at the time the improvement was ordered.

Upon the question of estoppel, in my opinion upon the facts presented in this case, the plaintiffs are not estopped from questioning their liability under this assessment, upon the ground that the commissioners did not have jurisdiction for want of a majority of names upon the petition. This question, I think, is clearly settled by the decision in Tone v. Columbus, 39 Ohio St., 281.

Petitioners have a right to assume that public officers properly perform their duties, and in my judgment, if it were found that a majority did not stand in position of signers of this petition at the time of the making of the order, this assessment might be enjoined by these plaintiffs, although they were petitioners for the improvement.